Craig K. Perry
Nevada Bar # 003786
CRAIG K. PERRY & ASSOCIATES
2300 W. Sahara Ave., Suite 800
Las Vegas, Nevada 89102
(702) 228-4777
(702) 943-7520 Fax
cperry@craigperry.com

Christopher E. Roberts *pro hac vice* forthcoming
Email: CRoberts@butschroberts.com
BUTSCH ROBERTS & ASSOCIATES LLC
7777 Bonhomme Avenue, Suite 1300
Clayton, Missouri 63105
Telephone: (314) 863-5700

*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| JASON CARRODINE, individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SNAP FINANCE, LLC.<br>Serve registered agent at:<br>Corporation Service Company<br>15 West South Temple, Suite 600<br>Salt Lake City, Utah 84101<br><br>Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

COMES NOW Plaintiff, Jason Carrodine ("Plaintiff" or "Carrodine"), individually, and on behalf of all others similarly situated, through his undersigned counsel, and for his Class Action Complaint against Defendant, Snap Finance, LLC ("Defendant" or "Snap Finance"), states:

## INTRODUCTION AND BACKGROUND ON THE TCPA

1. The receipt of unwanted telemarketing communications has been, for many years, the top consumer complaint made to state and federal agencies around the country. This case is about stopping incessant telemarketers, like Defendant, from placing calls to the cell phones of Carrodine and likely thousands of other persons whose phone numbers were registered on the National Do-Not-Call Registry ("DNC List").

2. Carrodine brings this class action lawsuit against Defendant for improperly placing these calls to persons whose phone numbers were registered on the DNC List, in violation of the TCPA, U.S.C. § 227 *et seq.*, and the TCPA's corresponding regulations.

3. In 1991, after passage with bipartisan support in Congress, President George H.W. Bush signed the Telephone Consumer Protection Act ("TCPA") into law, to protect consumers' privacy rights; namely, the right to be left alone from unwanted telemarketing communications. A leading sponsor of the TCPA described unwanted telemarketing communications as "the scourge of modern civilization." 137 Cong. Rec. 30821 (1991).

4. The TCPA affords protections to people, like Carrodine, who receive telephone solicitation communications, despite their phone numbers being registered on the DNC List. *See* 47 U.S.C. § 227(c)(3)(A)(iii); 47 C.F.R. § 64.1200(c)(2). The penalty for violating the TCPA is up to $500 per call, and up to $1,500 per call if the TCPA is willfully or knowingly violated. *See* 47 U.S.C. § 227(c)(5).

5. The TCPA affords special protections for people who, like Carrodine, request to be placed on a company's Internal DNC List. Specifically, the TCPA provides that each person who receives more than one call on their cell phone after requesting to be placed on the company's internal do not call list is entitled to recover a penalty of $500 per call, and up to $1,500 per call if the TCPA is willfully or knowingly violated. *See* 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(d).

6. The problem with receiving unwanted telemarketing communications is a problem that most people in this country, like Carrodine, frequently face. For example, in the first three months of 2026 alone, approximately 11.9 billion robocalls were placed in the United States. RobocallIndex.com, YouMail Robocall Index, https://robocallindex.com/history/time (last visited April 7, 2026).

7. Decades after the TCPA passed into law, it is still unfortunately the case that "month after month, unwanted telemarketing calls and texts top the list of consumer complaints received by the [Federal Communications] Commission." *Omnibus TCPA Order*, 30 FCC Rcd. 7961, 7964 (F.C.C. July 10, 2015).

8. The private right of enforcement of the TCPA is critical to stopping the proliferation of these unwanted telemarketing calls. For example, while the Federal Communications Commission ("FCC") levied more than $200 million in penalties against telemarketers between 2015 and 2018, it collected less than $7,000 of that amount. *See* Sarah Krouse, *The FCC Has Fined Robocallers $208 Million. It's Collected $6,790*, THE WALL STREET JOURNAL, March 28, 2019, https://www.wsj.com/articles/the-fcc-has-fined-robocallers-208-million-its-collected-6-790-11553770803.

**JURISDICTION AND VENUE**

9. This Court has subject matter jurisdiction over the TCPA claims in this action under 28 U.S.C. § 1331, which grants this Court original jurisdiction of all civil actions arising under the laws of the United States.

10. This Court has personal jurisdiction over Defendant because Defendant

transacts business in Nevada, directly markets its services in Nevada, and sells its services to Nevada consumers, and for the reasons otherwise set forth in this Complaint.

11. Defendant has continuous and systematic contacts with the State of Nevada.

12. Carrodine was (and is) a resident and citizen of the State of Nevada at all times relevant to this Complaint.

13. Venue is proper under 28 U.S.C. §§ 1391(b)(2) as a substantial portion of the events giving rise to the claims herein arose in this District and the harms of Defendant's actions occurred, at least in part, in this venue.

14. The Court has jurisdiction over this dispute for these reasons and for the reasons set forth in this Complaint.

## PARTIES

15. At all times relevant to this Complaint, Carrodine was, and is still, the owner of a cell phone, with a phone number of 702-XXX-9862.

16. Carrodine registered his phone number on the DNC List on October 23, 2014, for the purpose of being left alone by telemarketers.

17. The monthly bill associated with Carrodine's phone number is issued in his name, and not in the name of a business.

18. Carrodine uses his phone primarily for personal purposes, such as communicating with friends and family members.

19. Defendant Snap Finance, LLC is a Utah limited liability company with its principal place of business in Utah.

20. Defendant's website is http://snapfinance.com

21. Defendant's website states Defendant's "product offering includes retail installment contracts, bank installment loans, and lease-to-own financing."

22. Defendant markets its services by, in part, placing telemarketing

communications, to consumers such as Carrodine and the putative class members.

23. Carrodine and the putative class members did not provide "prior express written consent" (as that term is defined in 47 C.F.R. § 64.1200(f)(9)) or any form of consent to be contacted on their phones by Defendant or anyone acting on its behalf.

**DEFENDANT'S TEXT MESSAGES TO PLAINTIFF**

24. On June 28, 2025, Defendant sent the following text message to Plaintiff:

> Snap Finance: Don't miss your chance to upgrade. Get what you need with Snap! https://smssnap.com/p/37d3wJVJ/210ntT
> Msg&data rates may apply.
> Reply HELP for help, STOP to cancel.

25. On August 30, 2025, Defendant sent the following text message to Plaintiff:

> Jason, Labor Day sales won't last! Use your Snap Finance approval to shop now with lease-to-own financing. Explore stores online and near your today. Apply today: https://smssnap.com/p/rGGiZJ50/210ntT

26. On November 6, 2025, Defendant sent the following text message to Plaintiff:

> Big expense? Snap makes it easy to shop now and pay later. Apply online or in-store. https://smssnap.com/p/GUuBNEbE/210ntT
> Msg&data rates may apply.
> Reply HELP for help, STOP to cancel.

27. On November 20, 2025, Defendant sent the following text message to Plaintiff:

> Snap's lease-to-own financing can help you shop with confidence this holiday season. Don't wait, apply now: https://smssnap.com/p/B7ODipwk/210ntT

Msg&data rates may apply.
Reply HELP for help, STOP to cancel.

28. The links in the text messages sent by Defendant to Plaintiff direct the recipient to Defendant's website.

29. The telephone solicitation calls placed to Carrodine and the putative class members were placed with the purpose of selling Defendant's financing products and services.

30. Carrodine never inquired about Defendant's services for at least 18 months before receiving the text messages at issue, nor did he provide any form of consent to be contacted by Defendant on his cell phone.

31. Carrodine seeks recovery individually, and on behalf of the putative class members, for the communications sent to Carrodine and the putative class members by or on behalf of Defendant in violation of the TCPA.

## DIRECT AND VICARIOUS LIABILITY

32. Without the benefit of discovery, and because Defendant disclosed its identity through the communications at issue, Carrodine assumes Defendant directly placed the communications at issue.

33. However, if some or all the communications were placed by third-party/parties on behalf of Defendant, in the alternative, Defendant is vicariously liable for those calls.

34. On May 9, 2013, the FCC determined that telemarketers like Defendant could not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside of the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more

> expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain relief. As the FTC noted, because "[s]ellers may have thousands of "independent" marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*In re: Dish Network, LLC,* 28 F.C.C. Rcd. 6574 at 6588 (May 9, 2013) (internal citations omitted).

35. Moreover, the May 2013 FCC ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal actual agency and immediate direction and control over third parties who place a telemarketing call. *Id*. at 6587 n. 107.

36. The evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593.

37. If Defendant directly placed the communications at issue to Carrodine and the putative class members, Defendant is directly liable for the placing of those calls.

38. However, Defendant may have hired, encouraged, permitted, and enjoyed the benefits of mass telemarketing by third-party telemarketers.

39. If Defendant did not directly place the communications at issue to Carrodine and the putative class members, Defendant's third-party telemarketers had actual and/or apparent authority to act on behalf of Defendant.

40. Likewise, Defendant also ratified its agents' violations of the TCPA by accepting sales from unlawful telemarketing communications.

41. Defendant controlled or had the right to control the marketing activities of those acting on its behalf.

42. Defendant acted as a principal to the telemarketing agent(s) acting on its

behalf.

43. Defendant is not permitted under the law to outsource and contract its way out of liability by directing and benefitting from its agents' TCPA violations.

44. For the count identified below, if Defendant directly placed the calls at issue to Carrodine and the putative class members, it is directly liable. Alternatively, to the extent any calls were placed by a third-party agent(s) acting on Defendant's behalf, Defendant is vicariously liable for those unlawful communications.

## CLASS ALLEGATIONS

45. Pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), Plaintiff brings this lawsuit as a class action on behalf of himself, and all others similarly situated. This action satisfies the requirements of Rule 23.

46. Carrodine seeks to represent the following class:

> **DNC Class:** All persons in the United States who from four years prior to the date of the filing of this lawsuit until the date of class certification: (1) received two or more calls during a 12-month period in connection with the marketing of Defendant's products and/or services; (2) whose number was registered on the DNC List for more than 30 days at the time the calls were received; and, (3) whose phone number is registered to an individual and not a business.

47. Carrodine reserves the right to add administrative subclass or add classes, and/or to amend the definition of the proposed classes, as this lawsuit proceeds.

48. The members of the proposed class are so numerous that joinder of all members is impracticable. Carrodine reasonably believes that hundreds or thousands of people have been harmed by Defendant's actions. The phone numbers of the members of the proposed class are readily identifiable through records available to Defendant or those acting on their behalf.

49. Most members of the proposed class have suffered damages in an amount such that it would make filing separate lawsuits by individual members economically infeasible.

50. On information and belief, Defendant has called and likely continues to

call people whose numbers are on the DNC List. It is reasonable to expect that Defendant will continue to place such calls, absent this lawsuit.

51. Common questions of law and fact exist as to all members of the proposed class and predominate over any questions affecting only individual members. The questions of law and fact common to the proposed class include, but are not limited to:

a. Whether Defendant's conduct of placing calls to phone numbers on the DNC List violates 47 U.S.C. § 227(c) and/or the TCPA's corresponding regulations;

b. Whether the calls were "solicitations," as defined by the TCPA;

c. Whether Defendant maintained and effectively implemented sufficient protocols to prevent the placing of calls to persons whose phone numbers are on the DNC List;

d. Whether Defendant's conduct violates the rules and regulations implementing the TCPA; and

e. Whether Carrodine and the putative class members are entitled to increased damages for each violation based on the willfulness of Defendant's conduct.

52. Carrodine's claims are typical of the claims of the proposed class members because his claims arise from the same practice that gives rise to the claims of the members of the proposed class and are based on the same legal theories.

53. Carrodine and his counsel will fairly and adequately protect the interests of the members of the proposed class. Carrodine's interests do not conflict with the interests of the proposed class he seeks to represent, and he has retained lawyers who are competent and experienced in class action litigation, TCPA litigation and consumer law.

54. Carrodine's counsel will vigorously litigate this case as a class action.

55. A class action is superior to all individual lawsuits for this controversy. Joinder of all proposed members of the proposed class in one action is impracticable, if not impossible, and prosecuting hundreds or thousands of individual actions is not feasible. The size of individual claims is likely not large enough to justify filing a

separate action for each claim. For many, if not most members of the proposed class, a class action is the only procedural mechanism that will allow recovery. Even if members of the proposed class had the resources to pursue individual litigation, that method would be unduly burdensome to the courts. Individual litigation could also result in inconsistent adjudications.

56. In contrast, a class action is superior in that it will benefit the court and litigating parties through efficiency, economy of scale and unitary adjudication resulting from supervision of the litigation by a single court.

57. Questions of law and fact, particularly (and not limited to) the propriety of placing telephone solicitations to persons on the DNC List, predominate over questions affecting only individual members.

58. Defendant has acted or refused to act on grounds that apply generally to the Class, making injunctive relief or corresponding declaratory relief appropriate with respect to the putative class members.

## COUNT I
## Violations of the Telephone Consumer Protection Act
## 47 U.S.C. § 227(c), *et seq.* (National DNC List Violations)

59. Carrodine incorporates by reference the allegations of the previous paragraphs as if fully stated in this Count.

60. The TCPA provides that "a person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection" may recover $500 for each violation, and up to $1,500 for each violation, if the violation is determined to be willful. *See* 47 U.S.C. § 227(c)(5).

61. In addition, the TCPA allows the Court to enjoin Defendant's violations of the TCPA's regulations prohibiting calls to phone numbers registered on the DNC List. *See* 47 U.S.C. § 227(c)(5)(A).

62. By placing telephone solicitations to Carrodine's and the DNC Class members' phone numbers, which were registered on the DNC List, Defendant violated the TCPA, including, but not limited to, 47 U.S.C. § 227(c), and the TCPA's corresponding regulations.

63. In addition, the TCPA allows the Court to enjoin Defendant from placing text messages to phone numbers that are registered on the DNC List. *See* 47 U.S.C. § 227(c)(5)(A).

64. Defendant knew or had reason to know that Carrodine's and DNC Class members' phone numbers were on the DNC List but placed telephone solicitation communications to them anyway.

65. Defendant willfully violated the TCPA by placing telephone solicitation communications to Carrodine and the DNC Class members despite knowing or having reason to know they did not have consent to call them and knowing their numbers were registered on the DNC List.

66. Carrodine and the DNC Class members are entitled to damages of up to $500.00 per violation for each call placed by Defendant in violation of the TCPA and up to $1,500.00 per violation if the Court finds that Defendant willfully violated the TCPA.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff Jason Carrodine, individually, and on behalf of all others similarly situated, requests that the Court:

a. Enter an order pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), certifying the proposed Class, appointing Plaintiff as the DNC Class representative, and appointing him counsel as class counsel;

b. Enter judgment in favor of Plaintiff and the DNC Class members and against Defendant for all damages and other relief available under the TCPA, 47 U.S.C. § 227(c), including injunctive relief, statutory damages of up to $500 per violation, and up to $1,500 per violation if Defendant willfully violated the TCPA;

c. Enter a judgment in favor of Plaintiff and the DNC Class that enjoins Defendant from violating the TCPA's provisions and regulations;

d. Enter judgment in favor of Plaintiff and the DNC Class for all applicable pre-judgment and post-judgment interest amounts;

e. Enter judgment in favor of Plaintiff and the DNC Class for all costs, including the cost of class notice; and

f. Award Plaintiff and the DNC Class members such further and other relief the Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Please take notice that Plaintiff Jason Carrodine demands a jury trial.

Dated: June 11, 2026

Respectfully submitted,

CRAIG K. PERRY & ASSOCIATES

*/s/ Craig K. Perry*

Craig K. Perry, Esq.
Nevada Bar No. 3786
2300 W. Sahara Ave., Suite 800
Las Vegas, Nevada 89102
Telephone: (702) 228-4777
Email: cperry@craigperry.com

BUTSCH ROBERTS & ASSOCIATES LLC

*/s/Christopher E. Roberts*

Christopher E. Roberts *pro hac vice* application forthcoming
Email: CRoberts@butschroberts.com
7777 Bonhomme Avenue, Suite 1300
Clayton, Missouri 63105
Telephone: (314) 863-5700

*Attorneys for Plaintiff*